# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LISA SALLAJ,

                                          **Plaintiff**,                    **Case No. 25-1119-DDC-BGS**

v.

LAURA HOWARD, et al.,

                                          **Defendants**.

_____

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Lisa Sallaj has sued defendants Laura Howard, Secretary of the Kansas

Department of Aging and Disability Services, in her official capacity; UnitedHealthcare of the

Midwest, Inc. (UHC);[2] and Modivcare.  She brings a series of claims against these defendants,

all arising out of an allegedly unfair decision to deny Medicaid services.

This Order decides an array of outstanding motions:  Ms. Howard and UHC both have

filed motions to dismiss.  The court grants Ms. Howard's Motion to Dismiss (Doc. 11) and

---

[1]    Plaintiff proceeds pro se.  The court construes plaintiff's filings liberally and "hold[s] [them] to less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court doesn't assume the role of advocate for the pro se litigant.  *Hall*, 935 F.2d at 1110.  And our Circuit "'has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'"  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

[2]    UHC's brief explains that the named defendant—"United Healthcare"—isn't a real entity.  It doesn't exist.  Doc. 34 at 1 n.1.  Plaintiff doesn't contest this proposition.  *See generally* Doc. 36.  The court thus assumes that plaintiff intended to sue UnitedHealthcare of the Midwest, Inc.  *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243–44 (10th Cir. 2007) (authorizing courts to "look at the body" of a pro se litigant's "complaint to determine who the intended and proper defendants are").  The court thus directs the Clerk of Court to update the docket to list "UnitedHealthcare of the Midwest, Inc." as a defendant in lieu of "United Healthcare."

grants in part and denies in part UHC's Motion to Dismiss (Doc. 33). And plaintiff has filed an Application for Clerks Entry of Default (Doc. 31); a Motion to Strike (Doc. 37); and a Motion for Leave to File Sur-Reply (Doc. 43). The court denies all of plaintiff's motions. The court explains these results, below, starting with the facts plaintiff alleges in her Complaint.

## I.    Background

The following facts come from plaintiff's Complaint (Doc. 1). The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to Plaintiff[], and draw[s] all reasonable inferences from the facts in favor of Plaintiff[]." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

Plaintiff is permanently disabled from a traumatic brain injury, mobility impairments, and other medical conditions. Doc. 1 at 2 (Compl. ¶ 4). Defendant UHC is a managed care organization (MCO) for KanCare—the program who administers Medicaid in Kansas. *See id.* (Compl. ¶ 6). Through its contract with KanCare, UHC agrees to provide—among other services—non-emergency medical transportation to enrolled beneficiaries. *Id.* And UHC contracts with defendant Modivcare to fulfill these transportation duties. *Id.* at 2–3 (Compl. ¶ 7).

In 2020, plaintiff—who at the time lived in Anthony, Kansas—requested non-emergency medical transportation through KanCare to access a variety of medical appointments. *Id.* at 3 (Compl. ¶ 10). Despite repeatedly booking transportation with UHC and Modivcare, plaintiff received no transportation services. *Id.* (Compl. ¶ 11). Plaintiff filed ten grievances and five appeals with UHC, who acknowledged the error but never arranged transportation for her. *Id.* (Compl. ¶ 12). This failure caused plaintiff to miss a series of medical appointments. *Id.* (Compl. ¶ 13).

In November 2022, KDADS approved plaintiff for its Brain Injury waiver program, entitling plaintiff to receive services including in-home support and transportation. *Id.* (Compl.

¶ 14). Despite this approval, plaintiff didn't receive any services through this program between November 2022 through May 2023. *Id.* at 4 (Compl. ¶ 17). KDADS allegedly justified this outcome by falsely claiming plaintiff had declined the services. *Id.* at 5 (Compl. ¶ 18). Eventually, plaintiff managed to re-enroll in the Brain Injury waiver program. *Id.* But one of UHC's employees told plaintiff that she wouldn't get transportation services. *Id.* Plaintiff alleges that she received a letter asserting that the state had terminated her services based on false statements by UHC's employee that plaintiff had refused to allow service providers into her home. *Id.* at 6 (Compl. ¶ 18). Plaintiff challenged her disenrollment from the program in a hearing before a Kansas administrative law judge. *See id.* at 8 (Compl. ¶ 22). Plaintiff claims that the ALJ improperly received testimony and made erroneous evidentiary rulings. *Id.*

Based on these events, plaintiff asserts the following claims:

- a breach-of-contract claim against all defendants, *id.* at 10–11 (Compl. ¶¶ 26–27);

- a negligence claim based on the failure to administer Medicaid benefits against all defendants, *id.* at 11 (Compl. ¶ 28);

- a Fourteenth Amendment due process claim against all defendants, *id.* (Compl. ¶ 29);

- an Americans with Disabilities Act (ADA)[3] claim against all defendants, *id.* (Compl. ¶ 30);

- a § 1983 claim based on due process and Medicaid law violations against all defendants, *id.* at 11–12 (Compl. ¶¶ 31–33);

- a False Claims Act claim against UHC and Modivcare, *id.* at 12–13 (Compl. ¶¶ 33–34).

The court next outlines the governing legal standard for defendants' Motions to Dismiss.

---

[3]     The ADA Amendments Act of 2008 ("ADAAA") amended the ADA and "went into effect on January 1, 2009." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017). Here, the "events that form the basis for [plaintiff's] disability-related claims occurred after this [effective] date; therefore, the ADAAA is technically applicable here." *Id.* The "ADAAA primarily effected revisions to the ADA's definition of 'disability.'" *Id.* Because plaintiff's disability status isn't relevant to any issue decided here, the court "freely rel[ies] on authorities [existing] prior to ADAAA's effective date that apply and construe the ADA, insofar as they are relevant." *Id.* For simplicity, the court refers to this governing law as the ADA. *See Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 795 (10th Cir. 2025) (referring to the governing law as the "ADA," not the "ADAAA").

## II.        Legal Standard

UHC and Ms. Howard each have filed motions asking the court to dismiss plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).  But Ms. Howard's motion also advances arguments about the court's subject matter jurisdiction.  The court construes these jurisdiction arguments as ones seeking dismissal under Federal Rule of Civil Procedure 12(b)(1). The court thus outlines the governing standard for motions made under both of these rules, starting with Rule 12(b)(6).

### A.        12(b)(6)

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands

more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

B.    **12(b)(1)**

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction and, as such, [they] must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction—here, plaintiff—bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

Rule 12(b)(1) motions take one of two forms: a facial attack or a factual attack. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "A facial attack asserts that the allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction. By contrast, a factual attack on the complaint challenges the veracity of the allegations upon which subject matter jurisdiction depends." *Cnty. Comm'rs v. U.S. Dep't of the Interior*, 614 F. Supp. 3d 944, 951 (D.N.M. 2022) (quotation cleaned up). Here, Ms. Howard makes a facial attack on jurisdiction. So, the court assumes the allegations in the Complaint are true.

This Order addresses UHC's Motion to Dismiss (Doc. 33), first, followed by Ms. Howard's Motion to Dismiss (Doc. 11).

## III.        UHC's Motion to Dismiss (Doc. 33)

UHC advances arguments against each of plaintiff's claims.  The court tackles these

arguments, in turn.  This Order then turns to plaintiff's Motion to Strike (Doc. 37), which asks

the court to strike an affidavit that UHC filed in support of its motion.  Finally, concluding that it

must dismiss most of plaintiff's claims against UHC, the court addresses the effect of these

dismissals on defendant Modivcare, who hasn't pleaded but recently entered an appearance.  *See*

Doc. 50.

### A.        Breach-of-Contract Claim

UHC first argues that plaintiff can't bring a breach-of-contract claim because the relevant

contracts here disclaim any third-party interests in them.  Doc. 34 at 4–6.  The court agrees, but

only in part.

Under Kansas law,[4] a contract "beneficiary may sue to enforce a contract made by others

only if he is an intended beneficiary, *i.e.*, one who the contracting parties intended should receive

a direct benefit from the contract."  *Tri-State Truck Ins. v. First Nat'l Bank*, 535 F. App'x 653,

660 (10th Cir. 2013) (citing *Noller v. GMC Truck & Coach Div.*, 772 P.2d 271, 275 (Kan.

1989)).  Here, UHC's contract with Kansas explicitly disclaims third-party beneficiaries.  Doc.

34-2 at 4 ("This contract shall not be construed as providing an enforceable right to any third

party.").  So too does the contract between UHC and defendant Modivcare's predecessor.  Doc.

---

[4]        No party has briefed any choice-of-law issues.  But the court concludes that Kansas law governs
plaintiff's state-law claims.  That's because the "Court applies the forum state's choice-of-law rules to
determine which state's substantive law governs a claim."  *Nordwald v. Brightlink Commc'ns, LLC*, 603
F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496
(1941)).  Where, as here, "a party fails to make 'a clear showing that another state's law should apply,'
Kansas choice of law principles require a court to default to Kansas substantive law."  *Howard v.
Ferrellgas Partners, L.P.*, 748 F.3d 975, 982 (10th Cir. 2014) (quoting *In re K.M.H.*, 169 P.3d 1025, 1032
(Kan. 2007)).  The court thus applies Kansas law to plaintiff's contract and tort claims.

34-3 at 13 ("No Third-Party beneficiaries. United and [Modivcare's predecessor] LGTC are the only entities with rights and remedies under the Agreement.").[5] These contract provisions seriously undermine plaintiff's claim. They demonstrate that the parties to these contracts' parties didn't intend to create a benefit on which plaintiff could sue. *See State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1232 (Kan. 2005) ("We have long held: Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." (quotation cleaned up)).

Hoping to resist this outcome, plaintiff argues that the purpose of these contracts—which, she contends, is to benefit her—means the court should construe the contracts to make her a third-party beneficiary. Doc. 36 at 9. But Kansas law rejects plaintiff's proposition. A "'contract will often benefit a third person. But unless the third person is an intended beneficiary . . . no duty to [her] is created.'" *Stovall*, 107 P.3d at 1232 (quoting Restatement (Second) of Contracts § 302 cmt. e (A.L.I. 1981)). The contracts' provisions disclaiming third-party beneficiaries make it plain. Plaintiff isn't an intended beneficiary. So, her argument about the purpose of the contracts withers. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) ("A party may allege it was intended to benefit from a contract, but such allegations do not overcome contradictory statements in the text of a contract[.]") (applying Colorado law); *Graham v. Blue Cross & Blue Shield of N.M.*, No. 22-cv-00305-KG-GJF, 2023 WL 6065282, at *5–6 (D.N.M. Sept. 18, 2023) (dismissing breach-of-contract claim under New Mexico law where Medicaid contract expressly disclaimed third-party beneficiaries).

---

[5]    The Complaint references both contracts trying to support plaintiff's breach-of-contract claim. Doc. 1 at 10 (Compl. ¶ 26). And no one disputes their authenticity. The court thus properly may consider them at this motion-to-dismiss stage. *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023) (explaining that district courts may consider "'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity'" (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010))).

In short, plaintiff's claims based on the contract between UHC and Kansas and the contract between UHC and Modivcare fail as a matter of law.  So, the court dismisses those contract claims without prejudice.  *See Gee*, 627 F.3d at 1186 ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]").

But plaintiff also argues that she's alleged that UHC violated another contract—one that she signed.  Doc. 36 at 9–10; *see also id.* at 59–65.[6]  This other document, titled "Kansas Person-Centered Service Plan," outlines plaintiff's rights and responsibilities regarding her relationship with UHC.  *Id.* at 61.  The document also outlines a service plan for plaintiff.  *Id.* at 60–61.  And liberally construed, the Complaint alleges that UHC violated this contract by failing to provide services to her.  *See* Doc. 1 at 8–10 (Compl. ¶ E).  UHC's arguments about plaintiff's third-party beneficiary status don't apply to this contract because plaintiff was a party to it.  Doc. 36 at 62 (showing plaintiff's signature).

In its reply brief, UHC asserts that plaintiff's claim based on this contract isn't viable because it relates to the Brain Injury waiver program, which falls under the Kansas Judicial Review Act.  Doc. 42 at 3.  UHC never explains this *ipse dixit* argument.  So the court rejects it. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (deeming arguments "waived when they are advanced in an opening brief only in a perfunctory manner" (quotation cleaned up)).  And regardless, UHC raised this argument for the first time in its reply brief, which furnishes an additional reason why it can't carry the day.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (explaining the rule that "a party waives issues and arguments raised for

---

[6]    The court properly may consider this contract for the same reasons it may consider the contracts UHC attached to its motion.  *See above* note 5.

the first time in a reply brief" (quotation cleaned up)).[7]  The court thus denies UHC's request to dismiss plaintiff's breach-of-contract claim predicated on the contract between UHC and plaintiff.

The court turns next to UHC's arguments about plaintiff's negligence claim.

### B.    Negligence

UHC next argues that the court should dismiss plaintiff's negligence claim because it doesn't owe any duty to plaintiff.  Doc. 34 at 6–7.  The court agrees, so it dismisses plaintiff's negligence claim.

A negligence claim requires a plaintiff to prove "the existence of a duty, a breach of that duty, an injury, and proximate cause, that is, a causal connection between the duty breached and the injury suffered."  *D.W. v. Bliss*, 112 P.3d 232, 238 (Kan. 2005) (quotation cleaned up).  "The existence of a legal duty is a question of law to be determined by the court."  *Id.* (quotation cleaned up).

Here, trying to support her negligence claim, plaintiff identifies a statute, 42 U.S.C. § 1396a(a)(8), and a regulation, 42 C.F.R. § 431.53.  Doc. 36 at 10–11.  She argues that these laws provide the requisite duties for her negligence claim.  But these laws impose duties on state Medicaid plans like KanCare, not private actors like UHC.  *See* 42 U.S.C. § 1396a(a)(8) (describing requirements for state Medicaid plans); 42 C.F.R. § 431.53 (outlining transportation

---

[7]      Plaintiff also filed a Motion for Leave to File Sur-Reply (Doc. 43), asking for permission to file a sur-reply to UHC's reply brief.  "Our court's local rules limit briefing on motions to the motion (with memorandum in support), a response, and a reply."  *Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1142 (D. Kan. 2020) (citing D. Kan. Rule 7.1(a), (c)), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021).  "'Surreplies are not typically allowed.'"  *Id.* (quoting *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd*, 189 F. App'x 752 (10th Cir. 2006)).  "When an argument is raised for the first time in reply, a district court may either grant leave to file a surreply or may disregard the newly raised materials and arguments."  *C&M Res., LLC v. Extraction Oil & Gas, Inc.*, 159 F.4th 755, 762 (10th Cir. 2025).  Here, the court won't consider the new arguments raised in UHC's reply brief. Thus, the court denies plaintiff's Motion for Leave to file Sur-Reply (Doc. 43).

requirements for state Medicaid plans). So neither of these laws creates a duty for a private corporation like UHC. Plaintiff thus has failed to identify a duty that UHC violated. Absent such a duty, plaintiff's negligence claim can't survive. So, the court dismisses without prejudice plaintiff's negligence claim against UHC.[8]

The court turns to UHC's argument that plaintiff can't state a § 1983 claim against it, next.

### C.    State Actor

UHC next argues that it's not a state actor, so plaintiff's § 1983 claims aren't viable. The court agrees.

A plaintiff may bring a civil cause of action under 42 U.S.C. § 1983, "which requires (1) deprivation of a federally protected right by (2) an actor acting under color of state law." *Fowler v. Stitt*, 104 F.4th 770, 797 (10th Cir. 2024) (quotation cleaned up). UHC's motion takes aim at the second element.

"'The traditional definition of acting under color of state law requires that the defendant in a [42 U.S.C.] § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Marin v. King*, 720 F. App'x 923, 934 (10th Cir. 2018) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). To incur liability, a defendant must "'fairly be said to be a state actor.'" *Johnson*

---

[8]    Under Kansas law, to determine whether a statute creates an individual right enforceable through negligence per se, courts must assess whether the legislature intended to create a private right of action. *See Pullen v. West*, 92 P.3d 584, 594 (Kan. 2004). Our Circuit recently held that § 1396a(a)(8) doesn't confer a private cause of action enforceable under § 1983. *Lancaster ex rel. Green v. Cartmell*, 162 F.4th 1063, 1070 (10th Cir. 2025). Citing the Supreme Court's decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), *Lancaster* explained that Congress rarely "confers individual rights" through its spending power. *Id.* at 1068. *Lancaster* suggests that § 1396a(a)(8) can't support a negligence claim under Kansas law. But because this Medicaid statute doesn't impose any duty on UHC, the court needn't decide that issue.

*v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).  A person may be a state actor because he is a state official.  *Id.*  Or, a person fairly may be considered a state actor "'because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"  *Id.* (quoting *Lugar*, 457 U.S. at 937).

The Tenth Circuit has identified four tests to help district courts determine whether a private party is deemed a state actor in the § 1983 context.  They are:  "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test."  *Johnson*, 293 F.3d at 1202 (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995)).  Under each test, "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'"  *Gallagher*, 49 F.3d at 1447 (quoting *Lugar*, 457 U.S. at 937) (explaining the Fourteenth Amendment and § 1983 prohibit states and state actors acting under color of law from depriving any person of their life, liberty, or property without due process of law, but these prohibitions apply only to governmental action, not private conduct).  Plaintiff here invokes the first two tests.

*First*, plaintiff argues that, UHC, because it was performing a public function, was acting under color of state law.  Doc. 36 at 10.  Not so.  "The public function tests asks whether the challenged action is a traditional and exclusive function of the state."  *Wittner v. Banner Health*, 720 F.3d 770, 776–77 (10th Cir. 2013) (quotation cleaned up).  "This test is difficult to satisfy.  While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State."  *Id.* (quotation cleaned up).  Plaintiff here hasn't alleged facts capable of supporting an inference that UHC was performing a function "exclusively reserved to the State."  *Id.* (quotation cleaned up).  To the contrary, courts regularly conclude that providing

11

medical services isn't the sort of function exclusively reserved to the state. *E.g.*, *Shannon v. Shannon*, 965 F.2d 542, 547 (7th Cir. 1992) ("Clearly, hospital care, while serving the public, is not the exclusive prerogative of the State."); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 8 (1st Cir. 2005) (rejecting argument that furnishing medical services to the poor is an exclusive government function); *Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 147 (D. Mass. 2016) ("Although the state may engage in the promotion of community health, community health is not an 'exclusively' governmental function." (quotation cleaned up)). The court thus concludes that plaintiff has failed to allege facts capable of supporting an inference that UHC acted under color of state law by performing a public function.

*Second*, plaintiff halfheartedly asserts that a nexus connects UHC and Kansas. Doc. 36 at 10. To support this argument, she cites a provision of the United State Code. She contends this law authorizes states to delegate their mandatory Medicaid duties to third-party MCOs. *Id.* (citing 42 U.S.C. § 1396a(a)). But the statute plaintiff cites doesn't contain the quotations she attributes to it. *See id.*; 42 U.S.C. § 1396a(a). And the nexus test requires the state to "exercise[] sufficient 'coercive power' over the challenged action." *Wittner*, 720 F.3d at 775 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Here, plaintiff alleges that UHC failed to provide contractually required transportation and healthcare services. *See* Doc. 1 at 8–10 (Compl. ¶ E). Plaintiff hasn't explained why the state is responsible for that failure. So "notwithstanding substantial entanglement with state rules and state funding, the challenged action was not state action because" the challenged conduct— inadequate medical service—isn't attributable to the state. *Wittner*, 720 F.3d at 775. In short, plaintiff hasn't alleged that UHC's failures "'result[ed] from the State's exercise of coercive power.'" *Id.* (quoting *Brentwood*, 531 U.S. at 296).

The weight of authority supports this conclusion.  A private entity acting as an MCO—

without more—doesn't act under color of state law.  *E.g.*, *Umeze v. N.Y. State Dep't of Health*,

No. 24-cv-7425, 2025 WL 2733451, at *9 (S.D.N.Y. Sept. 25, 2025) (concluding plaintiff had

failed to allege that "the State was responsible for the specific conduct by" MCO that caused

plaintiff injury); *Shaughnessy v. Wellcare Health Ins.*, No. 16-00635 DKW-KSC, 2017 WL

663230, at *3 (D. Haw. Feb. 16, 2017) (concluding that MCO's decision to deny care request

wasn't under color of state law); *Quinones v. UnitedHealth Grp. Inc.*, No. 14–00497 LEK–RLP,

2015 WL 4523499, at *5 (D. Haw. July 24, 2015) (same); *Prince George's Hosp. Ctr. v.

Advantage Healthplan Inc.*, 865 F. Supp. 2d 47, 54 (D.D.C. 2012) ("[A]n MCO is not deemed a

state actor by virtue of its contract with the state."), *reconsidered on other grounds*, 985 F. Supp.

2d 38 (D.D.C. 2013); *see also Tutuianu v. N.Y. Presbyterian Cmty. Health Plan*, No. 09-CV-

0788 (JG) (LB), 2009 WL 10706268, at *2 (E.D.N.Y. June 18, 2009) (explaining that "the fact

that" a private entity "may receive federal Medicaid funds and is subject to state regulation does

not establish that it is a state actor").  The court thus dismisses plaintiff's § 1983 claims against

UHC without prejudice.  There's no state actor.[9]

The court turns to UHC's arguments about plaintiff's ADA claims, next.

---

[9]    Independent of this state-action bar on § 1983 claims, litigants "do not have a cause of action against non-state actors directly under the Fourteenth Amendment."  *Payn v. Kelley*, 702 F. App'x 730, 733 (10th Cir. 2017); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities."); *District of Columbia v. Carter*, 409 U.S. 418, 423 (1973) ("[T]he commands of the Fourteenth Amendment are addressed only to the State or to those acting un[d]er color of its authority.  The Fourteenth Amendment itself erects no shield against merely private conduct, however discriminatory or wrongful." (quotation cleaned up)).  So even if plaintiff had offered some procedural vehicle other than § 1983 to assert her Fourteenth Amendment claim—which she hasn't—it still would fail against UHC.

### D.    ADA Claims

UHC asks the court to dismiss the claims plaintiff asserts under the ADA.  Doc. 34 at 10–13.  UHC argues that plaintiff hasn't alleged defendants discriminated against her based on disability.  The court agrees, and that warrants dismissal.

Plaintiff asserts claims under Title II and Title III of the ADA.  Claims made under either provision are plausible only if they allege that defendants discriminated against plaintiff on the basis of her disability.  *See* 42 U.S.C. § 12132 (prohibiting discrimination "by reason of such disability"); *id.* § 12182(a) (prohibiting discrimination "on the basis of disability"); *see also Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021) (explaining Title II claims require plaintiffs to "prove their disability was a but-for cause of the alleged discrimination"); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681–82 (2001) ("42 U.S.C. § 12182(a) sets forth Title III's general rule prohibiting public accommodations from discriminating against individuals because of their disabilities.").  But the Complaint never alleges any facts supporting an inference that UHC refused to provide services because of plaintiff's disability.  To the contrary, the Complaint offers several explanations for UHC's failure.  But none of them bear on plaintiff's disabilities.  For instance, plaintiff alleges that UHC relied on false testimony from one of its employees that plaintiff refused services.  Doc. 1 at 6 (Compl. ¶ 17).  Plaintiff also cites racial discrimination against people of color in Anthony, Kansas, as a reason that Modivcare—who provided transportation services for UHC—refused to dispatch a driver for her. *Id.* (Compl. ¶ 20).  But plaintiff never alleges any facts that suggest that UHC discriminated against plaintiff because of her disabilities.  And that status is the linchpin for both Title II and Title III claims.  The ADA claims thus fail to state a claim.  So, the court dismisses them without prejudice.

The court now turns to plaintiff's claim predicated on the False Claims Act. It fares no better.

### E.    False Claims Act Claim

The False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim [to the government] for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The FCA also contains a *qui tam* provision that allows a private party—a relator—"'to bring an FCA action on behalf of the Government.'" *U.S. ex rel. Louderback v. Sunovion Pharms., Inc.*, 703 F. Supp. 3d 961, 969 (D. Minn. 2023) (quoting *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26, 29 (2016)).

Here, plaintiff doesn't purport to bring a claim on behalf of the government. That's a problem for her FCA claim. The FCA only permits parties to bring civil actions "in the name of the Government." 31 U.S.C. § 3730(b)(1). Plaintiff's failure to bring her claim in the name of the United States dooms her claim. *See Knight v. U.S. Off. of Pers. Mgmt.*, No. 23-1193-DDC-GEB, 2024 WL 4562766, at *6 (D. Kan. Oct. 24, 2024) (dismissing FCA claim where plaintiff didn't bring it on behalf of the government). As UHC argues, plaintiff hasn't complied with the FCA's other procedural requirements, either. These include serving the government with a copy of the complaint and disclosing "substantially all material evidence and information the person possesses" and filing the complaint in camera. 31 U.S.C. § 3730(b)(2). Plaintiff concedes that she didn't follow any of these procedures. *See* Doc. 36 at 13. The court thus dismisses her FCA claim.

### F.    Motion to Strike (Doc. 37)

After UHC filed a memorandum supporting its Motion to Dismiss, plaintiff filed a Motion to Strike (Doc. 37). It asks the court to strike an affidavit attached to UHC's filing. Out of an abundance of caution, the court ordered that affidavit provisionally sealed. Doc. 38. And

the court likewise directed the Clerk to seal the memorandum and two other attached exhibits provisionally.  The court now denies plaintiff's Motion to Strike (Doc. 37).  And, for reasons explained below, directs the Clerk to unseal Doc. 34 and its attachments—Doc. 34-1; Doc. 34-2; and Doc. 34-3.

As an initial matter, a motion to strike under Fed. R. Civ. P. 12(f) isn't an appropriate procedural vehicle to safeguard confidential information presented by a motion.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added)); *Physicians Ins. Capital, LLC v. Praesidium Alliance Grp., LLC*, No. 12CV1789, 2013 WL 3787671, at *4 (N.D. Ohio July 18, 2013) (explaining that because "pleadings" don't include "affidavits, briefs, or exhibits[,]" "a motion to strike is not the proper vehicle for attacking" such filings).  So, to the extent plaintiff's motion asks the court to strike the affidavit attached to UHC's motion—or otherwise excise it from the docket—the court denies it.[10]

But the court's work can't end there.  Liberally construed, plaintiff's motion asks the court to seal the challenged affidavit.  As plaintiff tells it, this affidavit contains HIPAA-protected confidential content.  Doc. 37 at 1–3.  "A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records."  *Luo v. Wang*, 71 F.4th 1289, 1304 (10th Cir. 2023) (quotation cleaned up).  "The Court may order the sealing of documents if competing interests outweigh the public's interest."  *Parker v. United Airlines, Inc.*, 49 F.4th 1331, 1343 (10th Cir. 2022).

---

[10]    Whether the court properly may consider the affidavit when deciding UHC's Rule 12(b)(6) Motion to Dismiss is a different issue than whether the court should strike it.  The court needn't decide whether it properly may consider this document because the court didn't reference it when deciding UHC's Motion to Dismiss.

Plaintiff hasn't shouldered her burden to overcome the presumption against sealing. She asserts—albeit vaguely—that UHC disclosed her "Protected Health Information . . . and Medicaid beneficiary data[.]" Doc. 37 at 1. But she never explains which portions of UHC's filing disclose protected information. Her bare reference to HIPAA won't suffice to carry her burden. *See Womack v. Del. Highlands AL Servs. Provider, LLC*, No. 10–2312–SAC, 2012 WL 1033384, at *1 (D. Kan. Mar. 27, 2012) (denying motion to seal where movant "fail[ed] to identify with specificity what matters in its proposed filings implicate patient confidentiality and HIPAA"); *United States v. Edwards*, No. 12-20015-01-DDC, 2023 WL 6390528, at *1 (D. Kan. Sept. 27, 2023) (denying motion to seal where movant relied on HIPAA but failed to explain why HIPAA mandated sealing medical records). The only portion of the affidavit that plaintiff specifically highlights says this: "Based on United business records, maintained in the ordinary course of United's business, Ms. Sallaj is no longer enrolled in KanCare through United Healthcare of the Midwest, Inc., and her reported address is in Oklahoma." Doc. 34-1 at 2 (Wilson Aff. ¶ 6). But again, plaintiff hasn't explained what part of this paragraph discloses confidential information. Nor has plaintiff explained what "competing interests outweigh the public's interest" in accessing this information. *Parker*, 49 F.4th at 1343. What's more, all of the information in this paragraph is publicly available. Plaintiff's Complaint alleges that KDADS terminated her Medicaid benefits. *See* Doc. 1 at 7–8 (Compl. ¶ 21). And plaintiff disclosed her previous Oklahoma address in a lawsuit she filed in another federal court. *See* Notice of Change of Address, *Sallaj v. Steinger, Green & Feiner LLP*, No. 24-cv-01266 (M.D. Tenn. Apr. 25, 2025), Doc. 14 at 1.

In sum, plaintiff hasn't carried her burden to justify sealing any aspect of UHC's filing. The court thus denies her Motion to Strike (Doc. 37). And the court directs the Clerk of Court to unseal Doc. 34; Doc. 34-1; Doc. 34-2; and Doc. 34-3.

### G.    Defendant Modivcare

Also, the court dismisses without prejudice plaintiff's claims against Modivcare for the same reasons it dismisses plaintiff's claims against UHC. Although Modivcare hasn't pleaded, a district court "may properly on its own motion dismiss an action" against "defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981); *see also Sipple v. Zevita*, No. 23-cv-4038-HLT, 2023 WL 4706621, at *5 (D. Kan. July 24, 2023) (dismissing unserved defendant where moving defendant's arguments applied equally to unserved defendant). Section 1915 of Title 28 also justifies this dismissal. Plaintiff is proceeding here in forma pauperis under this statute. *See* Doc. 4. So, Section 1915 permits the court "at any time" to dismiss an action that "fails to state a claim on which relief may be granted[.]". 28 U.S.C. § 1915(e)(2)(b)(ii).

The court's analysis that plaintiff—with the exception of one of her contract claims—hasn't stated a cognizable claim against UHC applies equally to Modivcare. And plaintiff's surviving contract claim against UHC doesn't involve Modivcare.[11] So, plaintiff has no viable claims against Modivcare and the court dismisses it as a defendant. This result is neither harsh nor premature. Plaintiff has "had a full and fair opportunity to explain" why her claims should survive because she filed a response brief to UHC's Motion to Dismiss. *Sipple*, 2023 WL

---

[11]    Unlike her breach-of-contract claim against UHC, plaintiff hasn't identified any enforceable agreement that she entered with Modivcare. Plaintiff identifies an exhibit to one of her filings as a contract with Modivcare. Doc. 36 at 9. But the four corners of this exhibit establish it isn't a contract. *See id.* at 70–71. It's some sort of notice about Modivcare's services. *See id.*

4706621, at *5.  What's more, this same reasoning proves that plaintiff can't win the relief she seeks—a default judgment—against Modivcare anyway.  As the reasons for dismissal of plaintiff's claims against UHC demonstrate, there isn't "a sufficient basis in the pleadings" to enter default judgment against Modivcare.  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation cleaned up) (explaining that default judgment is appropriate only when "the unchallenged facts constitute a legitimate cause of action" (quotation cleaned up)).  Any result other than dismissal would dishonor Rule 1.  *See Sipple*, 2023 WL 4706621, at *6.

The court thus dismisses plaintiff's claims against defendant Modivcare.  So, plaintiff's Application for Clerk's Entry of Default (Doc. 31), which asks for an entry of default and a default judgment against Modivcare, is moot.  The court denies it on that basis.  Because the court terminates Modivcare as a defendant, the court also lifts the stay in this case, which Magistrate Judge Brooks Severson entered because of Modivcare's bankruptcy proceedings.  *See* Doc. 47.

The court next addresses Ms. Howard's Motion to Dismiss (Doc. 11).

## IV.  Ms. Howard's Motion to Dismiss (Doc. 11)

Ms. Howard's Motion to Dismiss advances jurisdictional and merits arguments.  Plaintiff responded, but Ms. Howard didn't file a reply brief.  The court starts with Ms. Howard's jurisdictional arguments, which invoke *Younger* abstention and Eleventh Amendment immunity.

### A.    *Younger* Abstention

Ms. Howard first argues that the court must abstain from exercising jurisdiction under *Younger*.  Doc. 12 at 2.  She argues that KDADS hasn't issued a final ruling in plaintiff's administrative appeal underlying this action.  *Id.*  As explained, the court disagrees that this case falls into one of the three exceptional categories warranting *Younger* abstention.

"A federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023) (quotation cleaned up). A case with state-court ties triggers *Younger* abstention "*only when* the state proceeding falls into one of the following categories: '(1) state criminal prosecutions, (2) civil enforcement proceedings that take on a quasi-criminal shape, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'" *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (quotation cleaned up) (emphasis in original) (quoting *Graff*, 65 F.4th at 522). These three "'exceptional'" categories "'define *Younger*'s scope.'" *Id.* (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). "Only 'exceptional' circumstances merit *Younger* abstention . . . and in the ordinary case, the default rule applies: that 'the pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 670 (10th Cir. 2020) (quotation cleaned up) (quoting *Sprint*, 571 U.S. at 73).

The administrative proceedings in this case don't fit in any of the so-called *Sprint* categories. *See Brown ex rel. Brown v. Day*, 555 F.3d 882, 889 (10th Cir. 2009) (explaining that state proceeding involving appeal of Medicaid-eligibility determination "was not the type of proceeding entitled to *Younger* deference"). It isn't a criminal proceeding. And it isn't a civil enforcement proceeding. *See Sprint*, 571 U.S. at 79–80 (explaining that this category typically involves formal charges brought by a state actor to sanction plaintiff); *Brown*, 555 F.3d at 889

(explaining that the "state did not compel [plaintiff] to participate in" proceedings where plaintiff appealed termination of Medicaid benefits).

Nor does it qualify for the third *Sprint* category—"'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'" *Travelers Cas. Ins.*, 98 F.4th at 1317 (quoting *Graff*, 65 F.4th at 522). This category "is geared to ensuring that federal courts do not interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments." *Rynearson v. Ferguson*, 903 F.3d 920, 926 (9th Cir. 2018). The two times the Supreme Court has applied this category have involved a civil contempt order and a requirement for posting bond pending appeal. *See Sprint*, 571 U.S. at 79 (first citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977); and then citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987)); *see also Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *4 (10th Cir. May 19, 2025) (describing these examples). An administrative appeal about eligibility for Medicaid benefits does "not 'implicate the state's interest in enforcing the orders and judgments of its courts.'" *Covington*, 2025 WL 1448661, at *5 (quotation cleaned up) (quoting *Sprint*, 571 U.S. at 72–73). The underlying state proceedings here thus don't fall into the third *Sprint* category either.

So none of the *Sprint* categories presents here. Ms. Howard hasn't argued otherwise. *See generally* Doc. 12. And "*Younger* extends no further" than these "exceptional" *Sprint* categories. *Travelers Cas. Ins.*, 98 F.4th at 1317 (quotation cleaned up). The court thus concludes *Younger* abstention isn't appropriate on this record.[12]

---

[12] Ms. Howard also argues that plaintiff hasn't exhausted administrative remedies. Doc. 12 at 2. But her argument is perfunctory. It references the Kansas Judicial Review Act, but she never explains why exhaustion is mandatory or otherwise requires dismissal. *See id.* The court thus rejects this argument. *See Walker*, 918 F.3d at 1151 (deeming arguments "waived when they are advanced in an opening brief only in a perfunctory manner" (quotation cleaned up)). Regardless, plaintiff has alleged that she exhausted administrative remedies. Doc. 1 at 8 (Compl. ¶ 23). And although Ms. Howard asserts

Ms. Howard also asserts Eleventh Amendment immunity, an issue the court takes up next.

**B.    Eleventh Amendment Immunity**

Ms. Howard next asserts Eleventh Amendment immunity.  "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).  "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id.* Where properly raised, Eleventh Amendment immunity deprives the court of subject matter jurisdiction. *Id.* ("Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." (quotation cleaned up)).  There "'are three exceptions to the Eleventh Amendment's guarantee of sovereign immunity to states.'" *Frank v. Lee*, 84 F.4th 1119, 1130–31 (10th Cir. 2023) (quoting *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015)).

> "First, a state may consent to suit in federal court.  Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."

*Id.* (quoting *Levy*, 789 F.3d at 1169).

 Plaintiff sues Ms. Howard—the secretary of a Kansas agency—in her official capacity. Doc. 1 at 1.  So, Eleventh Amendment immunity protects Ms. Howard unless one of the three exceptions applies.  *See Williams*, 928 F.3d at 1212.

---

that plaintiff is wrong, *see* Doc. 12 at 2, she hasn't explained why the court can disregard facts alleged in the Complaint at the motion-to-dismiss stage.

Plaintiff only invokes the third exception—*Ex parte Young*. Doc. 14 at 3–4. She argues that she seeks prospective injunctive relief. Having filed no reply brief, Ms. Howard never addresses this argument. "Under the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Frank*, 84 F.4th at 1132 (quotation cleaned up). Liberally construed, plaintiff's Complaint satisfies these requirements for some of plaintiff's claims against Ms. Howard. It alleges that Ms. Howard, in her official capacity, is violating § 1983 and the ADA by denying plaintiff Medicaid benefits. And it seeks injunctive and declaratory relief. Doc. 1 at 13 (Compl. § V.). So, *Ex parte Young* rescues plaintiff's claims against Ms. Howard premised on federal law and seeking the specified form of relief—injunctive or prospective declaratory relief. But it can't save plaintiff's federal claims for damages. *See K.A. v. Barnes*, 134 F.4th 1067, 1074 (10th Cir. 2025) (explaining that sovereign immunity protects state agencies and state officials sued in their official capacities from claims for damages). Nor can it protect plaintiff's state-law claims. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (explaining that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law").[13]

The court thus dismisses without prejudice plaintiff's federal claims against Ms. Howard for damages and her state-law claims. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (instructing that dismissals for lack of jurisdiction "must be without

---

[13] In some instances, Congress has abrogated states' Eleventh Amendment immunity for Title II claims under the ADA. *See, e.g.*, *Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012). But plaintiff wholly has failed to argue this point. *See generally* Doc. 14. And it's her burden "to demonstrate that [Ms. Howard's] assertion of Eleventh Amendment sovereign immunity does not bar [her] Title II claim." *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1260 (10th Cir. 2018). So, the court confines its discussion of sovereign immunity to the only issue plaintiff has briefed—*Ex parte Young*.

prejudice").[14] But plaintiff's ADA, due process, and § 1983 claims—to the extent they seek injunctive or prospective declaratory relief—survive Ms. Howard's assertion of Eleventh Amendment immunity. The court now turns to Ms. Howard's remaining motion-to-dismiss arguments.

### C.    Remaining Motion-to-Dismiss Arguments

Ms. Howard asserts a grab bag of other motion-to-dismiss arguments. The court addresses these arguments here.

#### 1.    Due Process Claims

Ms. Howard argues that plaintiff hasn't identified a property interest that due process protects. *See* Doc. 12 at 11–12. And, she contends, plaintiff—by her own admission—has received due process. *Id.* at 12–13.

The court agrees with Ms. Howard's second argument. Plaintiff concedes that she appeared for a hearing about her Medicaid benefits before an administrative law judge. *See* Doc. 1 at 8 (Compl. ¶ 22). She complains that the ALJ "accepted hearsay and testimony from witnesses with no knowledge of Plaintiff's file, refused to admit written grievances as evidence, and never issued a written decision." *Id.* But these alleged failures aren't the sort of shortcomings capable of supporting a procedural due process claim. Our court has explained that due "process requirements in administrative hearings are not as stringent as in normal judicial proceedings." *Rios v. Aguirre*, 276 F. Supp. 2d 1195, 1200 (D. Kan. 2003). "Procedural due process in an administrative action simply requires notice and the opportunity to be heard." *Id.*; *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1044 (10th Cir. 2016) ("The

---

14    The court also dismisses plaintiff's federal claims for retrospective declaratory relief. "The district court cannot issue a declaration that [defendant] violated [plaintiff's] federal rights in the past." *Barnes*, 134 F.4th at 1075 (quotation cleaned up).

essence of procedural due process is the provision to the affected party of *some* kind of notice and. . . *some* kind of hearing." (emphases and ellipsis in original) (quotation cleaned up)).

Plaintiff may disagree with some of the ALJ's evidentiary or procedural rulings, but those rulings—even if one of them is erroneous—don't mean the state ran afoul of the Due Process Clause. *See id.* ("Violation of state procedural requirements, however, does not in itself deny federal constitutional due process."); *see also Kong v. Colvin*, No. 23-2928, 2024 WL 5053433, at *1 (9th Cir. Dec. 10, 2024) (rejecting argument that ALJ's reference to exhibit that contained missing responses to interrogatories violated plaintiff's procedural due process rights). Even when viewed in the light most favorable to plaintiff, the Complaint doesn't allege that the administrative hearing deprived plaintiff of "notice [or] the opportunity to be heard." *Aguirre*, 276 F. Supp. 2d at 1200.[15] Her due process claim thus fails and the court dismisses it without prejudice.

### 2. ADA Claim

The court dismisses plaintiff's ADA claim against Ms. Howard for the same reason that it dismisses her ADA claim against the other defendants. She hasn't alleged facts capable of supporting an inference that any adverse action against her was imposed "on the basis of disability[,]" 42 U.S.C. § 12182(a), or "by reason of such disability," 42 U.S.C. § 12132.

---

[15]    The Complaint also asserts that defendants failed "to provide adequate notice, timely hearings, or reasoned decisions[.]" Doc. 1 at 11 (Compl. ¶ 29). This allegation is a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation cleaned up). The court thus needn't accept it as true. *Id.*

Confusingly, plaintiff's Response argues that the ALJ never held a hearing. Doc. 36 at 12. But the Complaint pleads otherwise. *See* Doc. 1 at 8 (Compl. ¶ 22) (alleging that the ALJ accepted improper testimony). The allegations in the Complaint—not plaintiff's briefing—control. *See Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1164 (D. Kan. 2017) ("The court does not consider allegations made in parties' briefs when deciding a motion to dismiss."); *see also Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (explaining that courts "only consider facts alleged in the complaint itself in evaluating the sufficiency of the complaint").

Without such facts, plaintiff's ADA claims aren't viable. And the court dismisses them without prejudice against Ms. Howard, too.

### 3. Remaining § 1983 Claim

Plaintiff's sole remaining claim against Ms. Howard is a § 1983 claim based on KDADS violating Medicaid law. *See* Doc. 1 at 12 (Compl. ¶ 31). Though Ms. Howard didn't attack this claim in her motion to dismiss, the court, in light of recent Circuit precedent, dismisses this claim because it's clear that the Complaint "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii).

As explained above, *see* note 8, our Circuit, recently ruled in a published opinion that a Medicaid provision doesn't create an enforceable right under § 1983. *Lancaster*, 162 F.4th at 1068–70. The relevant provision requires states to provide medical services "with reasonable promptness to all eligible individuals[.]" 42 U.S.C. § 1396a(a)(8). The Complaint cites this provision as the one that defendants allegedly violated. *See* Doc. 1 at 3 (Compl. ¶ 9). So, to the extent that plaintiff bases a § 1983 claim on defendants violating this statute, her claim fails "because § 1396a(a)(8) does not confer an individual right enforceable by the Lancasters through § 1983." *Lancaster*, 162 F.4th at 1070. To the extent plaintiff asserts a § 1983 claim on another Medicaid statute or regulation, *Lancaster* and *Medina* imply that those claims fail, too. That's so because Congress rarely "confers individual rights" through its spending power. *Id.* at 1068. And there's nothing to suggest that the Medicaid statutes qualify for such a rare exception. *See id.* at 1068–70. The court thus dismisses without prejudice plaintiff's § 1983 claim against Ms. Howard.

### V. Conclusion

The court dismisses all claims in this case except for plaintiff's breach-of-contract claim against UHC based on the contract between UHC and plaintiff. The court directs the Clerk of

Court to terminate Ms. Howard and Modivcare as defendants in this case. And the court lifts the stay on this case that Judge Severson previously entered.[16]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Laura Howard's Motion to Dismiss (Doc. 11) is granted. The court directs the Clerk of Court to terminate Ms. Howard as a defendant in this case.

**IT IS FURTHER ORDERED THAT** defendant UnitedHealthcare of the Midwest, Inc.'s Motion to Dismiss (Doc. 33) is granted in part and denied in part. The court directs the Clerk of Court to update the docket to list "UnitedHealthcare of the Midwest, Inc." as a defendant in this case instead of "United Healthcare."

**IT IS FURTHER ORDERED THAT** plaintiff's claims against defendant Modivcare are dismissed. The court directs the Clerk of Court to terminate Modivcare as a defendant.

**IT IS FURTHER ORDERED THAT** plaintiff's Application for Clerk's Entry of Default (Doc. 31) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Strike (Doc. 37) is denied. The court directs the Clerk of Court to unseal Doc. 34; Doc. 34-1; Doc. 34-2; and Doc. 34-3.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Leave to File Sur-Reply (Doc. 43) is denied.

**IT IS FURTHER ORDERED THAT** the stay (Doc. 47) the court previously entered is lifted.

**IT IS SO ORDERED.**

---

[16]  The court's 12(b)(1) and 12(b)(6) dismissals both are without prejudice. *Brereton*, 434 F.3d at 1216 (instructing that dismissals for lack of jurisdiction "must be without prejudice"); *Gee*, 627 F.3d at 1186 ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]").

Dated this 27th day of January, 2026, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge